In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from a judgment of the Supreme Court, Richmond County (Maltese, J.), entered August 17, 2011, which, upon a jury verdict in favor of the defendants Shailesh Pathare and Shailesh Pathare, M.D., EC., on the issue of liability, and upon an order of the same court dated September 27, 2010, denying their motion pursuant to CPLR 4404 (a) to set aside the verdict and for judgment as a matter of law, or alternatively, to set aside the verdict as contrary to the weight of the evidence or in the interest of justice and for a new trial, is in favor of those defendants and against them dismissing the complaint insofar as asserted against those defendants.
Ordered that the judgment is affirmed, with costs.
In determining the admissibility of expert testimony, New York follows the rule of Frye v United States (293 F 1013 [DC Cir 1923]) “that expert testimony based on scientific principles or procedures is admissible but only after a principle or procedure has ‘gained general acceptance’ in its specified field” (People v Wesley, 83 NY2d 417, 422 [1994], quoting Frye v United States, 293 F at 1014). The test’s limited purpose is to ascertain whether the expert’s conclusion is based upon accepted scientific principles, rather than simply the expert’s own unsupported beliefs (see DieJoia v Gacioch, 42 AD3d 977, 980 [2007]; Zito v Zabarsky, 28 AD3d 42, 46 [2006]; see also Rowe v Fisher, 82 AD3d 490, 491 [2011]). When applying the Frye test to assess the reliability of an expert’s theory of causation, “it is not necessary ‘that the underlying support for the theory . . . consist of cases or studies considering circumstances exactly parallel to those under consideration in the litigation. It is sufficient if a synthesis of various studies or cases reasonably permits the conclusion reached by the . . . expert’ ” (Zito v Zabarsky, 28 AD3d at 44, quoting Marsh v Smyth, 12 AD3d 307, 312-313 [2004]; see DieJoia v Gacioch, 42 AD3d at 979). “The fact that there [is] no textual authority directly on point to support the [expert’s] opinion is relevant only to the weight to be given the testimony, but does not preclude its admissibility” (Zito v Zabar *1010 sky, 28 AD3d at 46; see DieJoia v Gacioch, 42 AD3d at 979; Lugo v New York City Health & Hosps. Corp., 89 AD3d 42 [2011]; cf. Ratner v McNeil-PPC, Inc., 91 AD3d 63 [2011]).
Here, although the expert physician who testified on behalf of the defendants Shailesh Pathare and Shailesh Pathare, M.D., EC. (hereinafter together the Pathare defendants), failed to produce a case or study unequivocally establishing that an MRI scan performed within hours of a transforaminal epidural injection would have conclusively revealed any injury caused by that procedure, he did demonstrate that his theory was reasonably permitted by a synthesis of some of the medical literature presented to the Supreme Court. The literature established that the expert’s theory had an objective basis and was founded upon far more than theoretical speculation or a scientific hunch (see Lugo v New York City Health & Hosps. Corp., 89 AD3d at 61). The lack of textual authority to support the theory pertained to the weight to be given to his testimony, but did not preclude its admissibility (see Zito v Zabarsky, 28 AD3d at 46).
Under the circumstances of this case, the Supreme Court providently exercised its discretion in permitting the Pathare defendants’ expert to testify as to his theory that any injury the plaintiff GraceAnn LaRose might have sustained as a result of a transforaminal epidural injection administered by the defendant Shailesh Pathare to treat her upper and lower back pain should have shown up on an MRI scan taken shortly after the procedure.
The plaintiffs’ remaining contentions are without merit.
Mastro, J.E, Chambers, Hall and Lott, JJ., concur.